UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-cv-207

| | |
|---|---|
| TAHIRA ABDUR-RAHMAN, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Tahira Abdur-Rahman ("Plaintiff") brings this action against Defendant Wells Fargo Bank, N.A. ("Defendant") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e *et seq.*, violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), defamation, and promissory estoppel.

## NATURE OF THE ACTION

1. Plaintiff alleges that Defendant violated the Fair Credit Reporting Act ("FCRA") by failing to provide Plaintiff the summary of rights required by the FCRA before taking an adverse action that was based in whole or in part on a consumer report.

2. Plaintiff complains of discrimination and retaliation based on race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* In the alternative, Plaintiff complains of violations of Title VII based on Defendant's policies and processes having a disparate impact on African Americans and females.

3. Plaintiff complains of discrimination on the basis of race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981").

4. Plaintiff additionally asserts claims against Defendant under North Carolina state law for defamation and promissory estoppel.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is, and was at all relevant times, a resident of Charlotte, North Carolina.

6. Defendant is a Delaware corporation with an identified principal place of business of 101 North Phillips Avenue Sioux Falls, South Dakota 57104.

7. Defendant's registered office in North Carolina is located at 2626 Glenwood Avenue, Suite 550 Raleigh, North Carolina 27608.

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FCRA, 15 U.S.C. § 1681 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*

9. The claim for defamation is based on the common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the state law claims because it arises of the same nucleus of operative facts as the FCRA and Title VII claims.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, Defendant operates and maintains multiple places of business in this judicial district, and Defendant is registered to transact business in the State of North Carolina.

11. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

2
Case 3:21-cv-00207-RJC   Document 1   Filed 05/04/21   Page 2 of 20

## COVERAGE ALLEGATIONS

12. At all relevant times, Plaintiff was an "individual" and Defendant's "employee]" as that term is defined by Title VII.

13. At all relevant times, Defendant was, and is an "employer" as the term is defined by Title VII.

14. At all relevant times, Plaintiff was a "consumer" as that term is defined by the FCRA.

15. At all relevant times, Defendant was, and is, a "person" as the term is defined by the FCRA.

16. At all relevant times, Defendant was a "user" of the consumer reports of Plaintiff, as governed by the FCRA.

## ADMINISTRATIVE EXHAUSTION

17. Plaintiff satisfied her obligation to exhaust her administrative remedy on behalf of herself and all others similarly situated by timely filing a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination, harassment and/or retaliation on the basis of race and sex.

18. On February 3, 2021, the EEOC issued a Notice of Right to Sue and Plaintiff timely brings this action within ninety (90) days of her receipt thereof.

19. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## STATEMENT OF FACTS

20. Plaintiff is a 49 year old African-American female.

21. Plaintiff is a highly educated individual and obtained a Master's of Science in Management and a Bachelor's of Political Science.

22. From approximately 2009 to 2015, Plaintiff was a full-time employee of Defendant in the positions of Mortgage Loan Processor, Senior Mortgage Underwriter, Compliance Analyst Team Lead/Mortgage Services.

23. From approximately 2018 to 2021, Plaintiff has been jointly employed by Defendant in a variety of contract positions, as follows:

    a. From approximately August 2020 to January 2021 as a Business Systems Consultant/Consumer & Small Business Banking;

    b. From approximately March 2020 to July 2020 as a Business Systems Consultant 6/Project Manager: Strategic Execution & Operations;

    c. From approximately August 2019 to January 2020 as a Business Implementation Consultant 4: Information Technology-Operational Health Team; and

    d. From approximately October 2018 to July 2019 as a Business Systems Analyst 4/Wealth Investment Management.

24. As a contract employee, Plaintiff was required to submit to multiple background checks (hereinafter referred to as "consumer report(s)") in order to be jointly employed by Defendant. Plaintiff cleared each of these background checks.

25. On each occasion where she was required to submit to a consumer report check as a contract employee, Defendant never raised any concerns or asked questions about the information on her consumer report.

26. In Plaintiff's positions as a full-time employee and contract employee with Defendant, she was privy to confidential financial information and personally identifiable information about Defendant's customers.

27. In Plaintiff's positions as a full-time employee and contract employee with Defendant, she received performance evaluations and other feedback. This feedback was positive.

28. Plaintiff was never issued formal discipline during her employment as a full-time employee and contract employee with Defendant.

29. On or around December 16, 2019, Defendant offered Plaintiff employment in the position of 5520063-Business Systems Consultant 4 ("BSC4").

30. The BSC4 position was a lower-level position than those previously held by Plaintiff as a contract employee of Defendant.

31. The BSC4 offer of employment was contingent upon Plaintiff submitting to and clearing a consumer report check.

32. Having cleared multiple prior consumer report checks for contract employment with Defendant, Plaintiff had no reason to believe that she would not clear the BSC4 consumer report check.

33. After receiving the BSC4 offer of employment, Plaintiff declined other offers of employment in reliance on Defendant's offer.

34. Plaintiff was provided a copy of an FCRA disclosure and authorization to run a fingerprint check electronically. She then signed the disclosure and authorization using an e-signature.

35. Defendant ordered the consumer report on or around December 17, 2019.

36. Defendant also ordered a fingerprint check be conducted through the Federal Bureau of Investigation.

37. The consumer reporting agency that provided Plaintiff's consumer report was First Advantage.

38. On or around January 13, 2020, Plaintiff received a letter from Defendant, dated January 6, 2020.

39. Enclosed with the January 6, 2020 lettere ere:

   a. The First Advantage Background Report Summary, which indicated Plaintiff was "ineligible for hire;"

   b. A statement purporting to be the summary of rights required by the FCRA; and

   c. A letter from First Advantage indicating the fingerprint check revealed "adverse record information."

40. The specific reason Plaintiff was deemed "ineligible for hire" was not included within the January 6, 2020 letter or enclosed documents.

41. A full and complete copy of the consumer report was not provided with the January 6, 2020 letter or enclosed documents.

42. Upon information and belief, Defendant contracts with First Advantage to perform FCRA compliance tasks otherwise required of Defendant.

43. Upon information and belief, First Advantage marketed its services to Defendant and represented and held itself out as knowledgeable and competent in both furnishing accurate consumer reports, implementing an employer's hiring criteria, and providing employer notices in accordance with the FCRA.

44. No information was provided to Plaintiff about the procedure, if any, to appeal or otherwise dispute the "ineligible for hire" determination within Defendant's organization.

45. In an attempt to appeal or otherwise dispute the consumer report information and results, Plaintiff called First Advantage on January 13, 2020 and was told that she "passed the background check but not the fingerprint check" but that the representative was "not able" to talk to her about it. The First Advantage representative said someone would call Plaintiff back within 48 hours.

46. After not hearing back from First Advantage within 48 hours, Plaintiff called First Advantage on January 17, 2020 and was again told she would receive a return call within 48 hours.

47. When First Advantage finally called her back, they were unable to assist her with the dispute of the consumer report check results.

48. First Advantage assisted Plaintiff with ordering a full and complete copy of her consumer report.

49. Upon information and belief, Defendant gave First Advantage predetermined parameters of consumer report results and fingerprint check results, such that when a predetermined result is triggered, the consumer is automatically disqualified or deemed ineligible for employment.

50. On January 23, 2020, Plaintiff received an email from Wells Fargo Recruiting notifying her that her BCS4 "offer of employment is rescinded due to information found through the background screening process."

51. Plaintiff later learned that the offending information revealed during the background screening process, which resulted in the adverse action(s) by Defendant, was the fact

that Plaintiff was convicted of a domestic family-related charge in 2007, almost 13 years prior to Defendant rescinding the BSC4 offer of employment.

52. At or around the time Defendant rescinded Plaintiff's BSC4 offer of employment, Plaintiff was placed on a "do not hire" list.

53. As a result of Defendant placing Plaintiff on the "do not hire" list, Plaintiff was not eligible to obtain employment with Defendant.

54. As a result of Defendant placing Plaintiff on the "do not hire" list, Plaintiff was not eligible to obtain employment with other banks.

55. Plaintiff's reputation was irreparably harmed as a result of Defendant's actions.

56. The rescission of the BSC4 employment offer and the act of placing Plaintiff on a "do not hire" list constitute "adverse actions" within the scope of the FCRA.

57. Plaintiff received the full and complete copy of the consumer report, as ordered by First Advantage, *after* Defendant rescinded the BSC4 offer of employment and placed her on a "do not hire" list.

58. To date, Plaintiff has never received a copy of the fingerprint check results that were provided to Defendant.

59. The fingerprint check results are part of the consumer report relied upon by Defendant when deciding to take adverse action against Plaintiff.

60. As such, Plaintiff should have been provided a copy of her fingerprint check results prior to Defendant rescinding the BSC4 offer of employment.

61. Neither First Advantage nor Defendant provided Plaintiff a copy of her consumer report with a sufficient amount of time prior to Defendant taking adverse action against her in whole or in part because of the consumer report.

62. As a result of Defendant's failure to provide a copy of the full and complete consumer report prior to taking adverse action, Plaintiff was unable to dispute the consumer report.

63. Upon information and belief, Defendant and First Advantage's process of not disclosing a full and complete copy of the consumer report prior to taking adverse action based in whole or in part on the consumer report is a process that is uniformly applied to nearly all of Defendant's employment applicants.

64. Upon information and belief, Defendant maintains and enforces a blanket policy that excludes individuals from employment based on results of consumer reports.

65. Upon information and belief, Defendant was aware that its "background decision matrix" could result in inappropriate hiring decisions.

66. Defendant did not consider the nature of the offense Plaintiff was convicted of when deciding to rescind the BSC4 offer of employment.

67. Defendant did not consider the length of time that had passed since Plaintiff was convicted of the offense when deciding to rescind the BSC4 offer of employment.

68. Defendant did not consider the relevance of the offense Plaintiff was convicted of to the BSC4 position when deciding to rescind the offer of employment.

69. The offense Plaintiff was convicted of was not job-related with respect to the BSC4 position nor consistent with Defendant's business necessity.

70. Defendant's policy of denying Plaintiff and similarly situated individuals employment based on consumer report results intentionally discriminates against African Americans and females.

71. Defendant's policy of denying Plaintiff and similarly situated individuals employment based on consumer report results disparately impacts African Americans and females.

72. Upon receiving notice that her BSC4 offer of employment was rescinded, Plaintiff called a recruiter at Wells Fargo on January 23, 2020 and asked what made her ineligible for hire. She was informed that it was not his department and that Defendant had its own background check department. Plaintiff then asked how to dispute the results and was told to call First Advantage.

73. That same day, Plaintiff called First Advantage twice. During the second call, a First Advantage representative told her there was nothing they could do to dispute Plaintiff's consumer report results. The representative also stated he did not know why Plaintiff was ineligible for employment but that Defendant "has parameters set in the system that disqualify candidates." The representative then told Plaintiff to call Defendant to inquire about the parameters but could not provide her a telephone number to call.

74. On January 29, 2020, in an attempt to dispute the consumer report results and/or remedy the rescission of her job offer, Plaintiff made multiple calls to Wells Fargo Human Resources, Wells Fargo Employee Operations, the North Carolina Department of Justice Consumer Protection Division, the Consumer Financial Protection Bureau, Wells Fargo Human Resources Background Screening Department, the Delaware State Police, and First Advantage.

75. On February 10, 2020 (28 days after Plaintiff began disputing the information and results of the consumer report), Plaintiff received a call from Defendant's Background Screening Department and was given an email address to submit her dispute to.

76. Plaintiff submitted her dispute to the designated email address on or around February 11, 2020.

77. In her dispute email, Plaintiff included a personal statement explaining the facts behind the results of the fingerprint check and consumer report. Plaintiff also included a statement from her son.

78. Defendant notified Plaintiff on February 25, 2020 that, after reviewing her appeal, Defendant was making her eligible for hire and removing her from the "do not hire" list. However, Defendant stated that it decided not to fill the BSC4 position, thus, it was not going to re-offer the job it had rescinded.

79. Defendant cannot delegate its duties under the FCRA and, therefore, is liable for the misconduct of its authorized agent, First Advantage.

80. From February 2020 to present, Plaintiff has been applying for alternative full-time employment opportunities with Defendant that match her education, experience, and skill set.

81. Since February 2020, Plaintiff has applied for more than 49 full-time employment opportunities with Defendant and, to date, has not been offered employment for any of these positions.

82. Defendant discriminated against Plaintiff and all others similarly situated on the basis of race, as well as subjected them to harassment and retaliation based on race.

83. Defendant discriminated against Plaintiff and all others similarly situated on the basis of sex, as well as subjected them to harassment and retaliation based on sex.

## DEFENDANT ACTED WILLFULLY

84. Defendant's procedures and conduct were willful and were carried out in a manner that Defendant intended, and not by mere accident or mistake.

85. Defendant's acts or omissions were at least reckless in that Defendant failed to make an appropriate or effective effort to comply with the FCRA, Title VII, or North Carolina state law.

86. Defendant knew or should have known its obligations under the FCRA, Title VII, and North Carolina state law.

87. Any reasonable employer knows about or can easily ascertain its obligations under the FCRA, Title VII, and North Carolina state law.

88. Despite at least the constructive knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiff, and similarly situated individuals, of their rights under the FCRA, Title VII, and North Carolina state law.

89. As a result of these violations, Defendant is liable to Plaintiff and similarly situated individuals for statutory damages, compensatory damages, and punitive damages and for attorney's fees and costs.

90. In the alternative to Plaintiff's allegations that Defendant violations were willful, she alleges that the violations were negligent as to her and similarly situated individuals.

## COUNT I

**Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)(A)(i)**

91. Plaintiff reasserts the allegations set forth in the above paragraphs.

92. Defendant willfully violated the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i), because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiff before taking an adverse action that was based in whole or in part on that report.

93. Plaintiff seeks statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

94. Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

95. In the alternative to the Plaintiff's allegations that these violations were willful, she alleges that the violations were negligent under 15 U.S.C. § 1681o.

## COUNT II

**Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681m *et seq.***

96. Plaintiff reasserts the allegations set forth in the above paragraphs.

97. Defendant willfully violated the FCRA, 15 U.S.C. § 1681m *et seq.*, because it, among other things, took an adverse action based on used information provided by a consumer reporting agency or affiliate and (i) failed to provide a copy of the information relied on to take the adverse action prior to or after taking the adverse action, (ii) failed to maintain a reasonable procedure to ensure compliance with the FCRA.

98. In the alternative to Plaintiff's allegations that these violations were willful, she alleges that the violations were negligent.

99. Plaintiff seeks all remedies available to her under the law.

## COUNT III

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. - Race**

100. Plaintiff reasserts the allegations set forth in the above paragraphs.

101. Defendant violated Title VII by denying employment, rescinding employment offer(s), and otherwise discriminating and retaliating against African Americans, including Plaintiff.

102. Defendant further violated Title VII by intentionally maintaining policies, processes, and a pattern or practice contained in its background screening process that it knew or should have known resulted in discriminatory hiring practices towards African Americans, including Plaintiff.

103. Defendant' violation of Title VII on the basis of race was willful.

## COUNT IV

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. - Sex**

104. Plaintiff reasserts the allegations set forth in the above paragraphs.

105. Defendant violated Title VII by denying employment, rescinding employment offer(s), and otherwise discriminating and retaliating against Plaintiff because of her sex.

106. Defendant further violated Title VII by intentionally maintaining policies, processes, and a pattern or practice contained in its background screening process that it knew or should have known resulted in discriminatory hiring practices towards females, including Plaintiff.

107. Defendant' violation of Title VII on the basis of sex was willful.

## COUNT V

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**

*Disparate Impact on the Basis of Race - Pled in the Alternative to Count III*

108. Plaintiff reasserts the allegations set forth in the above paragraphs.

109. Assuming *arguendo* that Defendant's background screening process as described herein is facially neutral, the application of the screening process resulted in a significantly discriminatory hiring pattern.

110. Defendant's implementation, enforcement, and reliance on predetermined background screening parameters to determine applicant eligibility for employment has an adverse effect on African Americans and cannot be justified by business necessity.

111. Defendant's blanket policy that excludes individuals from employment based on results of consumer reports has an adverse effect on African Americans and cannot be justified by business necessity.

112. Defendant's failure to provide full and complete copies of consumer reports to consumer applicants prior to taking adverse action(s), thereby depriving them the opportunity to dispute the consumer report results, constitutes a policy and practice that has an adverse effect on African Americans and cannot be justified by business necessity.

113. Even if such practices and policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

114. As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

115. Defendant has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

116. The foregoing policies, patterns, and/or practices have an unlawful disparate impact on African Americans in violation of 42 U.S.C. § 2000e *et seq.*

# COUNT VI

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**

*Disparate Impact on the Basis of Sex - Pled in the Alternative to Count IV*

117. Plaintiff reasserts the allegations set forth in the above paragraphs.

118. Assuming *arguendo* that Defendant's background screening process as described herein is facially neutral, the application of the screening process resulted in a significantly discriminatory hiring pattern.

119. Defendant's implementation, enforcement, and reliance on predetermined background screening parameters to determine applicant eligibility for employment has an adverse effect on females and cannot be justified by business necessity.

120. Defendant's blanket policy that excludes individuals from employment based on results of consumer reports has an adverse effect on females and cannot be justified by business necessity.

121. Defendant's failure to provide full and complete copies of consumer reports to consumer applicants prior to taking adverse action(s), thereby depriving them the opportunity to dispute the consumer report results, constitutes a policy and practice that has an adverse effect on females and cannot be justified by business necessity.

122. Even if such practices and policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

123. As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

124. Defendant has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

125. The foregoing policies, patterns, and/or practices have an unlawful disparate impact on females in violation of 42 U.S.C. § 2000e *et seq.*

## COUNT VII

### Violation of 42 U.S.C. § 1981 ("Section 1981")

126. Plaintiff reasserts the allegations set forth in the above paragraphs.

127. By the actions described herein above, Defendant denied Plaintiff, an African American, the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

128. Defendant's violation of Section 1981 was willful.

129. Defendant is liable to Plaintiff for all damages arising from Defendant's violation of Section 1981, in an amount to be determined at trial.

## COUNT VIII

### Defamation

130. Plaintiff reasserts the allegations set forth in the above paragraphs.

131. Upon information and belief, Defendant and Defendant's employees and representatives made statements to individuals in the banking community and financial industry that Plaintiff was listed on a "do not hire" list.

132. Defendant's and its employees' and representatives' made statements that were susceptible of only one meaning and were false.

133. Upon information and belief, Defendant and Defendant's employees and representatives published other false information to individuals in the banking community and financial industry regarding Plaintiff and her viability as a candidate for employment.

134. As a matter of law, the false, published statements by Defendant and its employees and representatives injured Plaintiff in her reputation, office, trade, and occupation.

135. Defendant's defamatory statements were willful.

136. Defendant is liable to Plaintiff for all damages arising from Defendant's defamatory statements regarding Plaintiff, in an amount to be determined at trial.

## COUNT IX

### Individual Claim for Promissory Estoppel

137. Plaintiff reasserts the allegations set forth in the above paragraphs.

138. Defendant made a sufficiently clear and definite promise to provide Plaintiff with employment as a BSC4.

139. Plaintiff, having cleared multiple background screening processes for Defendant, had no reason to believe that her BSC4 background screening process would prevent her from obtaining employment with Defendant.

140. Plaintiff reasonably and justifiably relied on Defendant's promise to provide her with employment to her substantial detriment by foregoing other employment opportunities.

141. Plaintiff's reliance on Defendant's promise was a substantial factor in causing her harm as alleged herein.

142. As a result, Plaintiff seeks all available relief and damages, in an amount to be proven at trial.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands and prays for:

a) An Order pursuant to the FCRA finding Defendant liable for statutory, equitable, and punitive damages;

b) An Order pursuant to Title VII finding Defendant liable for compensatory damages in an amount according to proof and punitive damages;

c) A judgment awarding Plaintiff damages for Defendant's defamatory remarks about Plaintiff;

d) A judgment awarding Plaintiff damages for promissory estoppel;

e) An Order awarding the costs of this action;

f) An Order awarding reasonable attorneys' fees;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

>/s/ L. Michelle Gessner
>L. Michelle Gessner, N.C. Bar No. 26590
>Nicole K. Haynes, N.C. Bar No. 47793
>John G. Hutchens, III, N.C. Bar No. 52214
>GESSNERLAW, PLLC
>602 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442
>Fax: (980) 206-0286
>Email: michelle@mgessnerlaw.com
>        nicole@mgessnerlaw.com
>        johnny@mgessnerlaw.com
>
>*Attorneys for Plaintiff*