UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00207-RJC

| TAHIRA ABDUR-RAHMAN, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| | ) **Order** |
| WELLS FARGO BANK N.A., | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Defendant's Motion to Dismiss or Strike (the "Motion") (Doc. No. 17). For the reasons statement herein the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

A. Factual Background

Accepting the factual allegations in the Amended Complaint as true, Plaintiff is a 48 year old African-American female. (Doc. No. 13 ¶ 18). Defendant Wells Fargo Bank, N.A. employed Plaintiff for several years, initially from 2009 to 2015, as a full-time employee in various roles, and then from 2018 to 2021, jointly in a number of contract positions. (*Id.* ¶¶ 18-21). On or around December 16, 2019, Defendant offered Plaintiff a position as a Business Systems Consultant 4 ("BSC4"). (*Id.* ¶¶ 27-28). The offer was contingent on Plaintiff submitting to and clearing a background check. (*Id.* ¶ 29). The next day, Defendant ordered, through First Advantage which Defendant contracts with to perform Fair Credit Reporting Act ("FCRA") tasks, a consumer report and a fingerprint check through the Federal Bureau of Investigation. (*Id.* ¶¶ 33-35, 40).

Thereafter, in January 2020, Plaintiff received a letter from Defendant, dated January 6,

2020, which also included a First Advantage Background Report Summary stating Plaintiff was "ineligible for hire," "a statement purporting to be the summary of rights required by the FCRA," and a letter from First Advantage indicating the fingerprint check revealed "adverse record information." (*Id.* ¶¶ 36-37). The letter and accompanying documents did not include a full and complete copy of the consumer report, the specific reason Plaintiff was deemed ineligible for hire, or the procedure to appeal or dispute the ineligible for hire determination with Defendant. (*Id.* ¶¶ 38-39, 42). After receiving the letter, on January 13, 2020, Plaintiff "called First Advantage and was told that she 'passed the background check but not the fingerprint check' but that the representative was 'not able' to talk to her about it," and that they would call her back within 48 hours. (*Id.* ¶ 43). Eventually, after more than 48 hours, First Advantage contacted Plaintiff and assisted her with ordering a full and complete copy of her consumer report, but was unable to assist her with disputing the results. (*Id.* ¶¶ 44-46).

On January 23, 2020, Plaintiff received an email from Wells Fargo Recruiting notifying her that her BSC4 "offer of employment is rescinded due to information found through the background screening process." (*Id.* ¶ 48). Defendant also placed Plaintiff on a "do not hire" list, making her ineligible for employment with Defendant and other banks. (*Id.* ¶¶ 50-52). That same day Plaintiff contacted a recruiter for Defendant who told her to call First Advantage to dispute the results of the consumer report. (*Id.* ¶ 71). When Plaintiff contacted First Advantage, the representative informed her "there was nothing they could do to dispute Plaintiff's consumer report results. The representative also stated he did not know why Plaintiff was ineligible for employment but that Defendant 'has parameters set in the system that disqualify candidates.' The representative then told Plaintiff to call Defendant to inquire about the parameters but could not provide her a telephone number to call." (*Id.* ¶ 72).

2

Plaintiff received a full and complete copy of the consumer report after Defendant rescinded the BSC4 offer and placed her on the "do not hire" list, but she never received a copy of the fingerprint check results. (*Id.* ¶¶ 55-57). Thus, Plaintiff could not dispute the consumer report and fingerprint check results prior to Defendant rescinding her employment offer. (*Id.* ¶ 58). She later learned the background screening process revealed a conviction in a domestic family-related charge in 2007, which caused her to be ineligible for hire. (*Id.* ¶ 49). According to Plaintiff, Defendant gave First Advantage predetermined parameters for consumer report results and fingerprint check results, such that when a predetermined result is triggered, the consumer is automatically disqualified or deemed ineligible for employment without considering other factors such as the nature of the offense, the length of time that passed, or the relevance of the conviction to the position. (*Id.* ¶¶ 47, 62-67). Plaintiff alleges this policy has a disparate impact on African Americans. (*Id.*).

After multiple calls made by Plaintiff, on February 10, 2020, Defendant's Background Screening Department provided her with an email address to submit her dispute. (*Id.* ¶¶ 73-74). She submitted her dispute the next day, including a personal statement explaining the facts and a statement from her son. (*Id.* ¶¶ 75-76). Afterward, Defendant notified Plaintiff she was eligible for hire and it removed her from the "do not hire" list, but Defendant decided not to fill the BSC4 position and did not reoffer the position. (*Id.* ¶¶ 76-77). Since February 2020, Plaintiff has been applying for alternative full-time employment opportunities with Defendant, including more than 49 full-time positions, but has not been offered another position. (*Id.* ¶¶ 79-80).

### B. Procedural Background

On May 4, 2021, Plaintiff filed the instant action. (Doc. No. 1). Defendant responded with a motion to dismiss or to strike class allegations, after which Plaintiff filed an amended class action

Complaint. (Doc. Nos. 10, 13). The Amended Complaint brings the following individual and class claims (1) violation of FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i); (2) violation of FCRA, 15 U.S.C. § 1681m *et seq.*; (3) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") disparate treatment on the basis of race; (4) violation of Title VII disparate impact on the basis of race, which is pled in the alternative to her Count III Title VII claim; and (5) an individual claim for violation of 42 U.S.C. § 1981.

Plaintiff's Complaint asserts the following classes:

- FCRA Class: All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. § 1681p, next preceding the filing of this action and during its pendency (the "FCRA Class").

- FCRA Sub-Class: All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. § 1681p, next preceding the filing of this action and during its pendency, against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report before providing a copy of the consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i) (the "FCRA Sub-Class").

- Title VII Class: All African American applicants for employment to Wells Fargo Bank who were coded by Defendant as having been rejected for adverse background screening beginning two years from the filing of the Complaint in this action to present (the "Title VII Class").

Defendant again responded, in part, with a motion to dismiss or to strike class allegations. (Doc. No. 17).

## II. LEGAL STANDARD

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard

4

of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic

remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1380 (2d ed. 1990)). In certain circumstances, motions to strike can "prevent the litigation of unnecessary issues and expedite the proceedings." *Staton v. N. State Acceptance, LLC*, No. 1:13-cv-277, 2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013) (quotation marks and citations omitted). "When reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C. 2010) (quotation marks omitted). District courts have broad discretion in disposing of motions to strike. *Hill v. Robeson Cty.*, 733 F. Supp. 2d 676, 690 (E.D.N.C. 2010).

While plaintiffs have the burden of proving class certification, courts analyze a pre-discovery challenge to class certification under the standard of review for Rule 12(b)(6) motions to dismiss. *Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020). Generally, courts do not strike or dismiss class allegations at the pleadings stage but instead allow for pre-certification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1). *Page v. Corvias Group, LLC*, No. 5:20-CV-336-D, 2021 WL 4163562, at *5 (E.D.N.C. Sept. 13, 2021). This is because, "[a] motion to strike [or dismiss] class allegations asks . . . that the Court preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Cnty. of Dorchester, S.C. v. AT&T Corp.*, 407 F. Supp. 3d 561, 565 (D.S.C. 2019). However, "[a] motion to dismiss [or strike] a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could

6

not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Id.* (quotations omitted); *Letart v. Union Carbide Corp.,* No. 2:19-CV-00877, 2020 WL 2949781, at *3 (S.D.W. Va. June 3, 2020).

### III. DISCUSSION

#### A. Fair Credit Reporting Act Class Claims

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). To fall within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure. *Id.* This rule requires a two-part test for certifying a class.

First, the plaintiff must establish the four requirements under Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." *Farrar & Farrar Dairy, Inc.*, 254 F.R.D. 68, 71 (E.D.N.C. 2008). Second, if a plaintiff meets all of the requirements of Rule 23(a), the plaintiff must show that the putative class also fits into one of the three categories enumerated in Rule 23(b). Fed. R. Civ. P. 23(b). A determination under Rule 23(b) is unnecessary unless each

7

of the prerequisites is met under Rule 23(a). *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 n.3 (4th Cir. 1998).

As stated by the Supreme Court, "commonality and typicality requirements of Rule 23(a) tend to merge," and "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). The commonality prerequisite requires a plaintiff to show that the class members share both a common contention and a common injury. *Wal-Mart*, 564 U.S. at 348–350. A common contention for example may be "the assertion of discriminatory bias on the part of the same supervisor." *Id.* at 350. A class' common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

In order to meet the typicality prerequisite, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks omitted). "That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). However, "[t]he representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members" and be "advanced by plaintiff's proof of his own individual claim." *Id.*

In addition, the Fourth Circuit has recognized that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" sometimes described

as the "ascertainability requirement." *Adair*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). Under this requirement, "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* If "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*; *Crosby v. Social Security Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (concluding the "standard 'within a reasonable time' makes class members impossible to identify prior to individualized fact-finding and litigation" and class was not ascertainable).

Fail-safe classes violate the ascertainability requirements "[b]ecause a fail-safe class requires a court to inquire into the merits of the underlying case to identify the members of the class." *Bigelow*, 2020 WL 5078770, at *4. A fail-safe class is one that "is defined so that whether a person qualifies as a member [of the class] depends on whether the person has a valid claim." *Adair*, 764 F.3d at 360 n.9 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)); *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). "Although the Supreme Court has not addressed the fail-safe question, nearly every circuit court of appeals to address the question considers fail-safe classes improper." *Bigelow*, 2020 WL 5078770, at *4 (collecting cases). These fail-safe classes are "prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Orduno*, 932 F.3d at 716 (quotations omitted); *Messner*, 669 F.3d at 825. Courts recognize that "the fail-safe problem is more of an art than a science . . . and often should be solved by refining the class definition rather than flatly denying class certification on that basis. *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012).

Plaintiff's Complaint brings two FCRA class claims alleging (1) Defendant failed to provide a copy of the consumer report used to make an employment decision before taking an adverse action that was based in whole or in part on that report;[1] and (2) Defendant took an adverse action based on information provided by a consumer reporting agency, and failed to provide a copy of the consumer report relied upon and failed to maintain a reasonable procedure to ensure compliance with FCRA.[2] She pleads the following FCRA-related classes:

- <u>FCRA Class</u>:  All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. § 1681p, next preceding the filing of this action and during its pendency.

- <u>FCRA Sub-Class</u>:  All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. § 1681p, next preceding the filing of this action and during its pendency, against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report before providing a copy of the consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i).

Defendant argues the Court should dismiss or strike both class claims because Plaintiff's FCRA Class does not meet the commonality and typicality requirements and is not ascertainable because (1) it includes individuals that have not suffered any harm, including all employees or prospective employees without an adverse employment action; (2) prospective members cannot be ascertained without an individualized inquiry; and (3) it is defined based on FCRA's statute of

---

[1] *See* 15 U.S.C. § 1681b(b)(3)(A) ("[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—(i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter . . . .").

[2] *See* 15 U.S.C. § 1681m.

limitations which has two different limitations periods[3] and may require individualized determinations. Additionally, it argues Plaintiff's FCRA Sub-Class is an impermissible fail-safe class.

Here, while the classes as defined in the Complaint are broad and may present fail-safe, commonality, or typicality issues at the certification stage, at the motion to dismiss stage the Court must consider whether Plaintiff could possibly make out a certifiable class. The Complaint sets forth factual allegations that Defendant rescinded Plaintiff's employment offer based on information in her consumer report before she received a copy of the report, that she did not receive a copy of the report, and that there may be others similarly situated. These factual allegations are sufficient for the Court to conclude at this stage, based on the FCRA-related classes as pled, the Complaint alleges facts sufficient for class claims under 15 U.S.C. § 1681b(b)(3)(A) and 15 U.S.C. § 1681m. Additionally, the classes as defined, while broad, could plausibly meet the certification requirements of Rule 23, albeit with some refinement. For example, the court in M*anuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238, 2015 WL 4994549 (E.D. Va. Aug. 19, 2015), certified a court modified class based on similar class and factual allegations by refining the class to meet the class certification standards.[4] As in *Manuel*, at the certification stage, the Plaintiff or the Court

---

[3] The FCRA statute of limitations is "the earlier of — (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

[4] The certified class, as modified by the court in the class certification order, was defined as: "All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries within the two years immediately preceding the filing of the Complaint in this matter on April 1, 2014, and as part of this application process were the subject of a consumer report obtained by Defendant, (a) who Defendant rejected for employment; (b) and to whom Defendant did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A) at least five business days before the date the consumer report at First Advantage was first coded as ineligible for hire."

11

can refine the classes as necessary to bring them within the requirements of Rule 23, if appropriate. Therefore, Defendant's motion to dismiss or strike Plaintiff's FCRA-related class claims is denied.

### B. Title VII Disparate Impact Individual and Class Claims

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577. "[D]isparate impact claims focus on employment practices that produce discriminatory results." *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020). These claims follow a burden-shifting scheme under which the plaintiff must first establish a prima facie case. *Anderson*, 406 F.3d at 265. If plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate the policy or practice has "a manifest relationship to the employment in question." *Id.* Finally, the burden shifts back to the plaintiff to show the employer was using the practice as a "mere pretext for discrimination." *Id.*

A prima facie case for disparate impact under Title VII requires the plaintiff to (1) identify a specific policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994–95 (1988); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 277 (4th Cir. 2005) (dissent). In other words, the plaintiff "must show that [a] facially neutral employment practice had a significantly discriminatory impact." *Anderson*, 406 F.3d at 264-65. "[A]t the pleadings stage, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination.'" *McCain v. United States,* No. 16-2095 (JLL) (JAD), 2016 WL 4149987 (D.N.J. Aug. 3, 2016) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002)). Additionally, a "Title VII disparate impact claim need not allege statistical support to survive a motion to dismiss." *Williams*

12

*v. Compassionate Care Hospice*, No. 16-2095 (JLL) (JAD), 2016 WL 4149987 (D.N.J. Aug. 3, 2016).

Plaintiff brings individual and class claims for disparate impact under Title VII, as an alternative to her Title VII disparate treatment claims, alleging Defendant's predetermined background screening parameters and blanket exclusion policy have an adverse effect on African Americans.[5] Defendant argues Plaintiff's Complaint only contains threadbare recitals of the elements of a disparate impact claim and does not allege any facts that African Americans were disqualified more than other races under a specific policy or practice, or a causal connection between the policy and disparate impact.

In response, Plaintiff points to paragraphs 61-70 of the Complaint which allege, in part, "Defendant maintains and enforces a blanket policy that excludes individuals from employment based on results of consumer reports;" "Defendant's parameters for excluding applicants based on consumer report results and fingerprint check results are over-inclusive and do not meet the standards of job-relatedness or consistency with business necessity;" "Defendant's policy of denying Plaintiff and similarly situated individuals employment based on consumer report results intentionally discriminates against African Americans;" and "Defendant's policy of denying Plaintiff and similarly situated individuals employment based on consumer report results disparately impacts African Americans." (Doc. No. 13 ¶¶ 62, 68, 69, 70).

Here, Plaintiff's Complaint identifies a specific policy – a blanket exclusion background check policy – which she alleges results in a disparate impact. However, the Complaint sets forth only conclusory allegations that the policy "disparately impacts" and has an "adverse effect" on

---

[5] Defendants do not move to dismiss or strike Plaintiff's disparate treatment claims.

African Americans rather than any factual allegations as to the disparate impact or how it is related to the policy. While Plaintiff is not required to come forward with statistical evidence to support her claim at the pleading stage, she still must allege some factual allegations, as opposed to mere conclusory allegations, that the policy disparately impacts African Americans. To support her claim, in response to Defendant's motion to dismiss, for the first time, Plaintiff cites to 2012 EEOC Enforcement Guidance which provides statistics on the arrest, conviction, and incarceration rates among African American individuals and concluding "criminal record exclusions have a disparate impact based on race and national origin." (Doc. No. 19-3 at 8-9). However, Plaintiff did not attach, reference, or otherwise discuss this guidance in her Complaint and did not set forth any factual allegations that may be gleaned from this guidance, or otherwise, to support her claim. Plaintiff in essence attempts to amend her Complaint through her response to Defendant's motion to dismiss to include the information contained in the EEOC Enforcement Guidance.

The Court will not now consider this document for purposes of the motion to dismiss because when deciding a motion to dismiss it may only consider the Complaint, documents attached to or incorporated into the Complaint, or that are "integral to and explicitly relied on in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). While Plaintiff cites to other courts that have denied motions to dismiss based on similar blanket background check exclusion policies, the Court finds these cases distinguishable because the complaints either incorporated the relevant EEOC Enforcement Guidance or contained other factual allegations not contained in Plaintiff's Complaint to support a claim for relief. *See McCain v. United States,* No. 2:14-CV-92, 2015 WL 1221257 (D. Vt. Mar. 17, 2015); *Williams v. Compassionate Care Hospice*, No. 16-2095 (JLL) (JAD), 2016 WL 4149987 (D.N.J. Aug. 3, 2016); *Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019); *see also Williams v. Wells Fargo*

*Bank, N.A.*, No. 4-15-cv-38, 2015 WL 13753220 (S.D. Iowa Aug. 6, 2015) (denying motion to dismiss without analyzing the factual allegations set forth in the complaint). Accordingly, Plaintiff's disparate impact claims will be dismissed.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss or Strike Plaintiff's original Complaint (Doc. No. 10) is **DENIED** as moot;

2. Defendant's Motion to Dismiss or Strike Plaintiff's Amended Complaint (Doc. No. 17) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion to Dismiss is **GRANTED** as to Plaintiff's disparate impact claims. The Motion is otherwise **DENIED**.

Signed: February 16, 2022

Robert J. Conrad, Jr.
United States District Judge